**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

Jackson Mahaffy; Flora Mahaffy; Daniel Nelson; and Paul Von Arx,

Plaintiffs,

vs.

Robert J. Kroll; Wallace M. Krueger; Christopher J. Bennett; Aaron C. Hanson, all acting in their individual capacity as Minneapolis Police Officers; John Does Nos. 1-8, acting in their individual capacities as Minneapolis Police Officers; and the City of Minneapolis,

Defendants.

---

Case File No.: 08-cv-_______ ____/___

**COMPLAINT**

JURY TRIAL DEMAND UNDER F.R.C.P. 38 (b)

For their Complaint, Plaintiffs Jackson Mahaffy, Flora Mahaffy, Daniel Nelson, and Paul Von Arx (collectively the "Plaintiffs") state and allege as follows:

1. This is an action for money damages for injuries sustained by each of the Plaintiffs as a result of the use of excessive force, unreasonable seizure, and violation of each of their constitutional rights by Defendants Robert J. Kroll, Wallace M. Kruger, Christopher J. Bennett, Aaron C. Hanson and other unnamed Minneapolis police officers. Defendants' conduct violated Plaintiffs' well-settled federal civil rights, all while acting under color of state law. Plaintiffs also assert a Monell claim against Defendant City of Minneapolis pursuant to Monell v. Department of Social Servs., 436 U.S. 658 (1978) and City of Canton v. Harris, 489 U.S. 378 (1989).

2. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(3). The

aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3. The amount in controversy exceeds $500,000.00 excluding costs and interest.

**PARTIES**

4. Plaintiff Jackson Mahaffy ("J. Mahaffy" or "Jack") was, at all times relevant to the facts herein, a citizen of the United States and a resident of the State of Minnesota. J. Mahaffy presently resides in Winnipeg, Manitoba, Canada.

5. Plaintiff Flora Mahaffy ("F. Mahaffy") was, at all times relevant to the facts herein, a citizen of the United States and a resident of the State of Minnesota. F. Mahaffy presently resides in Kansas City, Missouri. F. Mahaffy and J. Mahaffy are sister and brother.

6. Plaintiff Daniel Nelson ("Nelson") was, at all times relevant to the facts herein, a citizen of the United States and a resident of the State of Minnesota. Nelson presently resides in California.

7. Plaintiff Paul Von Arx ("Von Arx") was, at all times relevant to the facts herein, a citizen of the United States and a resident of the State of Minnesota. Von Arx presently resides in North Carolina.

8. Defendant Robert J. Kroll ("Kroll") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department with the rank of Sergeant. Upon information and belief Kroll is a citizen of the United States and a resident of the State of Minnesota.

9. Defendant Wallace M. Krueger ("Krueger") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department

with the rank of Sergeant. Upon information and belief Krueger is a citizen of the United States and a resident of the State of Minnesota.

10. Defendant Christopher J. Bennett ("Bennett") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department. Upon information and belief Bennett is a citizen of the United States and a resident of the State of Minnesota.

11. Defendant Aaron C. Hanson ("Hanson") was, at all times relevant to the facts alleged herein, a duly appointed and acting officer of the City of Minneapolis Police Department. Upon information and belief Hanson is a citizen of the United States and a resident of the State of Minnesota.

12. Defendants John Doe Nos. 1-8 are as yet unidentified persons duly appointed and acting as officers of the City of Minneapolis Police Department.

13. At all relevant times, Defendants Krueger, Kroll, Bennett, Hanson and John Doe Nos. 1-8 (collectively the "Defendants") were acting under their authority as police officers, under color of law, and pursuant to custom and usage of the City of Minneapolis.

14. Defendant City of Minneapolis is a municipal corporation, organized and existing under the laws of the State of Minnesota. Minneapolis was the employer of the individually named Defendants at all times relevant to this Complaint and was responsible for their supervision, training and discipline.

**FACTS**

15. On the evening of May 14, 2004, Plaintiffs J. Mahaffy, F. Mahaffy, Nelson and Von Arx were participating in an event known as the "Art-A-Whirl," and commonly referred to as the "Art Crawl."

16. The Art Crawl is an annual civic event taking place over one weekend each May in which participants take a walking tour of art galleries located in Northeast Minneapolis.

17. The Plaintiffs were attending the Art Crawl with a small group of friends. Plaintiffs and other members of their group were dressed in costumes, which is a tradition of the event.

18. At about 10 p.m. on May 14, 2004, Plaintiffs were gathered speaking with friends on or around the sidewalk in front of the Old Science Renovation art studio located at Marshall Avenue and 13th Street N.E., in the City of Minneapolis, Minnesota. Plaintiffs and their friends were slowly assembling in order to leave together on their bicycles to go to the next gallery.

19. J. Mahaffy was crossing Marshall Street N.E. around 10 p.m. At that time, Police Sergeants Krueger and Kroll were traveling southbound on Marshall Street N.E. in Krueger's personal vehicle. Krueger was driving the vehicle and both officers were out of uniform. Upon information and belief, Krueger's wife was also in the vehicle.

20. After Krueger's vehicle passed J. Mahaffy, Krueger stopped his vehicle in the middle of Marshall Street N.E. Krueger and Kroll exited the vehicle and rapidly approached J. Mahaffy on foot.

21. Without provocation, Kroll and/or Krueger violently shoved J. Mahaffy from behind, causing J. Mahaffy to fall to the ground and strike his head. At no point prior to the attack did Kroll or Krueger identify themselves as police officers.

22. J. Mahaffy describes these events as follows:

> I was crossing Marshall Street near 14th Avenue when two men approached me from behind. I remember getting shoved and knocked to the ground. Then one of the men sat on top of me and was hitting me.

23. F. Mahaffy, his sister, observed the following:

> I saw my brother Jack Mahaffy start to cross the street. He crossed the first traffic lane and then waited in the middle for cars to pass. My brother was sort of dancing around and waving his arms. Jack was not being aggressive. Suddenly, a dark SUV drove past him and then immediately stopped. Jack was turning to walk back towards me. I got nervous because these two guys jumped out of the SUV and I thought they were going to have some words with Jack. I think Jack may have hit their SUV with his bag. Then the men started running at Jack. Jack's back was to the men and he was walking away. The men caught up with Jack on the sidewalk and started punching him. Both of the men were holding Jack and hitting him.

24. Witness Britta Shernoch observed the following:

> I then saw these two angry guys running at Jack from the road so I knew they must have just gotten out of a vehicle. The two men ran at Jack and started punching him… The guy with the blue shirt on was on top of Jack punching him repeatedly even though Jack was already on the ground.

25. Zoe LeSout witnessed the initial attack and describes it as follows:

> Two large men, one in a blue t-shirt and one in black, both with short, almost shaved heads, ran out of the SUV, leaving their vehicle in the middle of the street. Neither man said anything before they started kicking and punching Jack in the head and stomach.

26. Paul Von Arx describes it as follows:

> And out of the corner of my eye, I saw two people rapidly approach someone…And then like attacking. Like I saw punches being swung… They were punching, kicking, you know just generally beating him up… I just saw them rush towards him and start attacking him. I didn't see anything that would trigger that. I did not witness anything that would trigger that. Um just like these two people randomly attacked him.

27. After J. Mahaffy had fallen to the ground, Krueger sat on the prone J. Mahaffy and punched J. Mahaffy in the face and head. The punches were hard, drawing blood, and were extremely painful to J. Mahaffy.

28. The owner of the Old Science Gallery, Eeris Fritz, witnessed the following:

> At approximately 10 p.m., my potter ran to me (I was in the kitchen) telling me that something ugly was happening in front of Dusty's and would I please come outside to check on things. I went outside and found two large men hitting and kicking a guy that was down on all fours. I yelled "Stop now!" while my potter was on the phone to the police. I continued to ask them to stop and was told the police were in route.

29. Witness Dylan Ryan saw the following:

> More people noticed the commotion and gathered around. I noticed another white man in a white shirt. He was with the blue-shirted man. The man in the white shirt held down the smaller man that the one in the blue shirt had grabbed at. The man in the blue shirt punched the smaller man in the face.

30. Shortly after Krueger and Kroll's attack on J. Mahaffy began, Jack's sister Flora Mahaffy approached Krueger and Kroll, pleading verbally with them to stop hitting Jack.

31. F. Mahaffy pulled at Krueger's shoulder from behind, hoping to pull Krueger away from punching J. Mahaffy. This caused F. Mahaffy to fall backwards to the pavement facing up.

32. After F. Mahaffy fell to the pavement, Krueger turned and, straddling her while she was prone on the ground, punched her in the face with his fist.

33. Flora Mahaffy describes these events as follows:

> I ran over and I grabbed one of the guy's shoulders from behind and pulled him away. We both sort of fell towards the ground. I fell onto the ground facing up and then this guy turned around and was on top of me. He then started hitting me. He punched me in the face and in the forehead. I later learned that the man punching me in the face was Wally Krueger and the other man is Robert Kroll.

34. Von Arx, who was witnessing events from the roof of the Old Science Renovation, describes it as follows:

> So my other friends, as they [Koll and Krueger] began to beat Jack up, started yelling, "What are you doing?" immediately ran over there and try

> to begin pulling these men off of Jack… These guys are on top of Jack who's on the ground like hitting him. And it was just like this jumble of people. I distinctly saw —out of this jumble of people, I distinctly saw the man wearing the black shirt who was balding and the mustache grab Flora's collar and punch her twice in the face… I saw one of these attackers punch one of my female friends [Flora] in the face.

35. Witness Danica Walton observed the following:

> Then, I clearly saw one of the men (the thinner one with dark hair) punch Flora in the face two times while she was trying to keep him off of her brother Jack. Jack was already beaten up pretty badly.

36. Witness Dylan Ryan observed the following:

> I tried to move aside the blue-shirted man since he seemed the most aggressive. He seemed to be trying to hit anybody who came close, and, as a result, hit at least two girls in the face.

37. Throughout the incident the Plaintiffs and the witnesses variously describe Kroll and Krueger as appearing "drunk," "enraged," "fuming," and "insane." For example, Paul Von Arx describes his observations of Krueger as follows:

> The way Wally Krueger was approaching people and myself included, he was looking very like… the adjective that in my mind that most describes it was rabid. Like he just—He was just shaking like fuming. Like he just wanted to like just you know, pummel someone. He was just like [sound of sucking in air] just like that's the image in my mind. That he was like this rabid dog that just wanted to like you know, go nuts and beat someone up. Like that's what I was thinking like… I didn't want to get close to the guy because he looked like he would just go crazy or something… here's some guy just at random and seemingly attack some folks on the Street. And I was just like… this guy is not in his right state of mind.

38. Erris Fritz observed Krueger as follows:

> He attempted to push up against me, but I stood my ground at the end of my driveway and did not allow him on our property. He backed off and I reminded him that the police were in route and that he needs to wait until they arrived and could talk with them. His girlfriend/wife came up to him and mumbled something to me. I told her the same thing – that they were not allowed on our property, etc…. I advised her to take her boyfriend/husband home after they talked to the police because he was drunk and should sleep it off.

39.     After Kroll and/or Krueger had punched F. Mahaffy, witness Doreen Johnson was passing by in her car and called 911.  She got out of her car to give the address to the 911 dispatcher and witnessed the ensuing incidents.

40.     After punching F. Mahaffy, Kroll made a call on his cell phone.  Kroll and Krueger stood in the middle of Marshall Avenue N.E. talking to each other while Kroll was also talking on the phone.  Upon information and belief, Kroll contacted other Minneapolis officers with the call.  At least two witnesses heard Kroll using "police jargon" while speaking on his cell phone.

41.     Around this time, numerous witnesses heard Krueger and Kroll yelling phrases like "come on, come on!" and "bring it on" as Krueger and Kroll waved their arms and stepped towards members of the crowd that had gathered.

42.     While Kroll was on his cell phone and also standing with Krueger, F. Mahaffy crawled towards the curb.  Zoe LeSout helped J. Mahaffy sit up near the curb to assess and assist with his injuries.  He was bleeding from the mouth.  Flora Mahaffy describes this as follows:

> After I got punched, I crawled away and sat down about eight feet away.  I closed my eyes for a little while and when I opened them again, Jack was with Zoe and his mouth was all bloody and glasses were broken.  I saw Kroll on his cell phone and Krueger with a woman he apparently knew.  I then went over to Jack and sat with him for a while.

43.     At that time, several Minneapolis Police squad cars with uniformed officers arrived on the scene.  Kroll and/or Krueger waved the squad cars over.  Defendant officers Bennett and Hanson arrived on the scene, along with other as yet unidentified Minneapolis Police Officers identified herein as John Doe Nos. 1-8.  The officers got out of their squad cars and stood in the street speaking to Kroll and Krueger.

44. Witnesses were yelling at the uniformed officers that [Kroll and Krueger] had attacked J. Mahaffy. Despite this, the uniformed officers that arrived pushed J. Mahaffy down to the pavement and placed handcuffs on him. The arriving officers took no action against Kroll and Krueger.

45. Witness Doreen Anderson reports:

> When police arrived, the man in the light blue t-shirt attacked the young man again, with absolutely NO provocation. I called 911 again and said three officers were on the scene and I thought an ambulance would be needed. The dispatcher informed me the situation was under control.

46. Witness Peter Nelson, a bystander, observed the following:

> What I and several other people (including at least three uniformed Minneapolis Police officers) saw or witnessed next is the inexcusable part that made me decide to become involved. As the young man in cuffs was being held down, bent over, kneeling on the concrete, the big guy in the blue shirt ran around the uniformed officers (with no one making any move to contain or restrain him), wound up his right foot and kicked the young man in the head. Hard. Then, the big guy in the blue shirt just trotted back over by the corner of the bar and stood next to one or two uniformed officers, sort of "hanging out."

47. Witness Dylan Ryan states:

> One of the bystanders was taken from the crowd and held down by the police officer. The boy who was held down by police was then kicked repeatedly by the blue-shirted man.

48. After the squad cars arrived, Paul Von Arx went to unlock his bike, believing the incident was over, and that the arriving officers would be arresting the aggressors, Kroll and Krueger. As he was bending over to unlock his bike, and with uniformed officers observing, Krueger approached Von Arx from behind and then punched Von Arx in the face. Von Arx describes it as follows:

> When the squad cars showed up, I figured they would arrest the guys who were beating people up. I remember thinking that the two guys were not going to beat anyone else up because the police were there. I was fully

> expecting that the cops would take care of things. I went to unlock my bike… We [Von Arx and Danica Walton] were both standing there as I was unlocking my bike when I was suddenly punched in the face in my right jaw. The punch knocked me down on top of the bikes. I looked up and saw Wally Krueger backing away…

49. Danica Walton offers the following description of Krueger punching Von Arx:

> As I and a friend, Paul Von Arx were unlocking our bikes, the dark-haired man, who appeared to be very high or drunk, crazily attacked Paul, blindsiding him in the head with his fist. This happened virtually right in front of the officers on the scene. I helped to keep Paul and the dark-haired man apart as this man was screaming things at Paul like "come on and get me motherfucker!" along with other obscenities trying to get Paul to fight. Fortunately I was able to hold Paul back as he wanted to defend himself from such an attack. The officers who showed up on the scene did nothing whatsoever as people pointed out the two men involved in the assault.

50. The uniformed officers, John Does 1-8 and Bennett and Hanson, observed Krueger attack Von Arx and observed Kroll attacking Jack Mahaffy yet took no action to intervene or restrain Krueger or Kroll. They just stood there and watched the assaults.

51. Then, while Bennett and Hanson and other uniformed officers were present and observing, Kroll ran towards Nelson while Nelson was sitting down and kicked Nelson in the face multiple times, cracking Mr. Nelson's tooth.

52. Flora Mahaffy witnessed Kroll's attack on Mr. Nelson and stated the following:

> As I was sitting with Zoe and Dan, I looked over and saw Kroll about six feet away. Kroll then ran towards us and kicked Dan in the face. Dan was sitting down. I do not know why Kroll kicked Dan, it was very surprising. Kroll kicked Dan three times in the face and then walked away. He never said anything. My friend Britta Shernoch stood up and yelled at Kroll to "get away from Dan!" A uniformed police officer grabbed Britta and threw her out of the way.

53. Dan Nelson describes it as follows:

> At this point, while the on-duty police officers were present, I sat down and was attacked. One of the men kicked me in the face and in the back of the head, chipping off a piece of my left, bottom wisdom tooth.

54. Britta Shernoch also witnessed Kroll attack Mr. Nelson. She stated:

> When the cops came, I took a few steps back from the whole scene and started looking for my backpack because it was missing. I found my backpack near where the first incident had taken place. I was really shaken up and I just wanted to leave. Then I saw the man in the black shirt attacking Dan. I tried to run over to stop him, but I was grabbed from behind by an officer and thrown to the ground. I didn't know who had thrown me to the ground, so I tried to fight them away and the man kicked me. I looked up and the man in the black shirt was kicking Dan in the head while he lay on the ground… The cops mad no move to stop the man in the black from attacking Dan.

55. Danica Walton reports: "I saw Dan Nelson get kicked in the head by one of the two men as Dan sat on the curb looking in the other direction."

56. Despite the pleas of F. Mahaffy, Nelson and numerous onlookers that Krueger and Kroll were solely responsible for the fight, the Minneapolis Police officers, including Bennett and Hanson, arrested J. Mahaffy.

57. After J. Mahaffy was handcuffed, the uniformed officers, including, upon information and belief, Bennett and Hanson, took J. Mahaffy and advised J. Mahaffy that he was under arrest. The uniformed officers then placed J. Mahaffy in the back of a Minneapolis Police Squad car.

58. There was no probable cause to believe that J. Mahaffy had engaged in any criminal conduct in regard to the incident.

59. While in the back of the car, J. Mahaffy did not feel well. He believes he may have lost consciousness when his head struck the pavement after being shoved, punched and/or kicked by Kroll and/or Krueger. J. Mahaffy's wooziness caused him to vomit twice after being placed under arrest, consistent with concussion symptoms.

60. Kroll and Krueger were allowed to leave the scene without Minneapolis police officers questioning them.

61. J. Mahaffy was taken to the Hennepin county jail and booked. He was incarcerated and charged with assaulting a police officer, riot and damage to a motor vehicle.

62. While being booked, J. Mahaffy explained that he did not feel well and wished to see a doctor about his head injury. He was allowed to see a nurse, who did not examine J. Mahaffy, but simply gave him two aspirin.

63. J. Mahaffy remained incarcerated at Hennepin County jail for three days, until Monday, May 17, 2004.

64. All criminal charges against J. Mahaffy were subsequently dismissed by the Minneapolis City Attorney.

65. Kroll and Krueger had no justifiable basis for their conduct towards Plaintiffs on the evening of May 14, 2004. Kroll and Krueger's conduct shocks the conscience.

66. Hanson, Bennett and other Minneapolis police officers who arrived at the scene falsely charged J. Mahaffy with a crime and made false statements in their police reports to help cover up the violations against Plaintiffs' civil rights by Krueger, Kroll, and other Minneapolis Police Officers.

67. Hanson, Bennett and other Minneapolis police officers' improper motives and deliberate indifference to Plaintiffs civil rights are evidenced by the fact that none of the Defendants or Minneapolis police officers present at the scene acknowledged or documented eyewitness accounts of the incident advising that J. Mahaffy had done nothing to warrant being charged with any crime or documented Kroll and/or Krueger's attacks on Plaintiffs.

68. Upon information and belief, Krueger and Kroll's position of command and authority negatively influenced the other Defendants and Minneapolis police officers' ability and/or willingness to protect Plaintiffs' civil rights.

69. Prior to filing this lawsuit, J. Mahaffy filed a complaint with the Minneapolis Civilian Police Review Authority ("MCPRA").

70. Upon information and belief, Krueger and Kroll were later temporarily suspended and suffered a temporary reduction in rank for their conduct in this incident.

## CAUSES OF ACTION

## COUNT ONE

### 42 U.S.C. § 1983 – FOURTH AMENDEMNT VIOLATIONS BY DEFENDANTS KROLL AND KRUEGER (EXCESIVE USE OF FORCE AND UNREASONALE SEIZURE)

71. Plaintiffs restate each factual allegation asserted in the preceding Paragraphs.

72. By the actions described above, Defendants Krueger and Kroll, under color of state law, violated and deprived Plaintiffs of their clearly established and well-settled civil rights to be free from excessive force and unreasonable seizure.

73. Krueger and Kroll subjected Plaintiffs to these deprivations of their rights either maliciously or by acting with reckless disregard for whether the Plaintiffs' rights would be violated by Krueger and Kroll's actions.

74. As a direct and proximate result of the acts and omissions of Defendants Krueger and Kroll, each Plaintiff suffered injuries, was forced to endure great pain and mental suffering and were each damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

75. Punitive damages are available against Defendants Krueger and Kroll and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as

such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

76. Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

**COUNT TWO**

**42 U.S.C. § 1983 – FOURTH AMENDEMNT VIOLATIONS BY DEFENDANTS BENNETT, HANSON AND JOHN DOE NO.'S 1-8 AGAINST JACK MAHAFFY (UNREASONALE SEIZURE)**

77. Plaintiffs restate each factual allegation asserted in the preceding Paragraphs.

78. By the actions described above, Defendants Bennett, Hanson, and John Doe No.'s 1-8 under color of state law, violated and deprived Plaintiff J. Mahaffy's clearly established and well-settled civil rights to be free from unreasonable seizure.

79. Defendants Bennett, Hanson, and John Doe No.'s 1-8subjected J. Mahaffy to these deprivations of his rights either maliciously or by acting with reckless disregard for whether J. Mahaffy's rights would be violated by their actions.

80. As a direct and proximate result of the acts and omissions of Defendants Bennett, Hanson, and John Doe No.'s 1-8, Plaintiff J. Mahaffy suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

81. Punitive damages are available against Defendants Bennett, Hanson, and John Doe 1-8 and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

82. Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

**COUNT THREE**

**42 U.S.C. § 1983 – FOURTH AMENDEMNT VIOLATIONS BY DEFENDANTS BENNETT, HANSON AND JOHN DOE NO.'S 1-8 (CONSPIRACY IN USE OF EXCESIVE OF FORCE AND UNREASONALE SEIZURE)**

83. Plaintiffs restate each factual allegation asserted in the preceding Paragraphs.

84. By the actions described above, Defendants Krueger, Kroll, Bennett, Hanson, and John Doe No.'s 1-8 under color of state law, conspired to, and did, violate and deprive each of the Plaintiffs of their clearly established and well-settled civil rights to be free from excessive force and unreasonable seizure.

85. Defendants Krueger, Kroll, Bennett, Hanson, and John Doe No.'s 1-8 conspired to, and did, subject each of the Plaintiffs to these deprivations of their rights either maliciously or by acting with reckless disregard for whether the Plaintiffs' rights would be violated by the Defendants' actions.

86. As a direct and proximate result of the conspiracy, and acts and omissions of Defendants Krueger, Kroll, Bennett, Hanson, and John Doe No.'s 1-8, each Plaintiff suffered injuries, were forced to endure great pain and mental suffering and were each damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

87. Punitive damages are available against Defendants Kroll, Krueger, Bennett, Hanson, and John Doe No.'s 1-8 and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. §549.20.

88. Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

**COUNT FOUR**

**NEGLIGENCE BY DEFENDANTS BENNETT, HANSON, JOHN DOE NO.'S 1-8 AND THE CITY OF MINNEAPOLIS (DELIBERATE INDIFFERENCE TO SAFETY, FAILURE TO PROTECT, AND STATE CREATED DANGER)**

89. Plaintiffs restate each factual allegation asserted in the preceding Paragraphs.

90. The Minneapolis Police Department had a policy or custom of allowing police officers to use or misuse their authority in furtherance of private ends, vendettas, and agendas (without monitoring and without preventing the misuse of that authority). Defendant officers were deliberately indifferent to a substantial risk of serious harm with regard to the Plaintiffs herein.

91. Bennett, Hanson and John Doe No.'s 1-8 knew Plaintiffs had not done anything to warrant use of force against Plaintiffs, yet failed to protect each of the Plaintiffs from Defendants Kroll, Kruger, and other officers who were harming them.

92. Bennett, Hanson and John Doe No.'s 1-8 had a constitutional duty to protect J. Mahaffy and the other Plaintiffs from violence at the hands of individuals known to be violent. Instead, through their actions, Defendants affirmatively increased the danger of, or vulnerability to, such violence beyond the level it would have been absent state action.

93. Kruger, Kroll, Bennett, Hanson and John Doe No.'s 1-8 took Plaintiff J. Mahaffy into custody, and while in custody, allowed, promoted and/or acquiesced in Kroll, Kruger, and other officers' acts of violence against J. Mahaffy and in otherwise violating his Constitutional rights.

94. By the above actions and inactions, Bennett, Hanson, and John Doe No.'s 1-8 brought J. Mahaffy into close proximity with someone known by the State to be violent, namely Kroll, Kruger, and other officers, and failed to intervene when those individuals known to be violent acted violently against J. Mahaffy.

95. The Defendants acted under color of law of a statute, ordinance, regulation, resolution, policy, custom or usage when they deprived Plaintiffs of their Constitutional rights, privileges, and immunities.

96. As a direct and proximate result of the Defendants' conduct, inaction, policy or customs as set forth above, Plaintiffs suffered the deprivation of their Constitutional and/or federal statutory rights and suffered personal injuries, were forced to endure great pain and mental suffering and were each damaged in an amount exceeding Five Hundred Thousand ($500,000.00).

97. Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

**COUNT FIVE**

**CIVIL RIGTHS VIOLATION BY CITY OF MINNEAPOLIS**

98. Plaintiffs restate each factual allegation asserted in the preceding Paragraphs.

99. Defendant City of Minneapolis intentionally, knowingly, recklessly, or with deliberate indifference to the rights of citizens, failed to supervise, instruct and train Defendants Krueger, Kroll, Bennett, Hanson, John Doe No.'s 1-8 and other Minneapolis police officers to refrain from unlawfully using unreasonable force, falsely charging citizens without probable cause, and unreasonably seizing citizens.

100.  Upon information and belief, before May 14, 2004, Defendant City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel, including Defendants Krueger, Kroll, Bennett, Hanson, and John Doe No.'s 1-8 of unjustified, unreasonable and illegal use of force, filing false police reports, falsely charging citizens without probable cause, unreasonable seizures and other forms of intimidation, coercion and harassment.

101.  As of May 14, 2004, Defendant City of Minneapolis maintained a custom and practice of deliberate indifference to citizen complaints alleging misconduct and failed to train, discipline, remediate, counsel or retrain officers with histories of improper, abusive and intentional misconduct.

102.  Defendant City of Minneapolis, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless or wanton conduct of Defendants Krueger, Kroll, Bennett, Hanson and John Doe No.'s 1-8.

103.  As a direct and proximate result of the acts and omissions, systemic flaws, policies and customs of Defendant City of Minneapolis, Defendant officers engaged in the above-described conduct in violation of each Plaintiffs' Constitutional rights, whereby each Plaintiff suffered injuries, was forced to endure great pain and mental suffering and was each damaged in an amount exceeding Five Hundred Thousand ($500,000.00) Dollars.

104.  Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them as follows:

1. Compensatory and special damages against the Defendants, jointly and severally, in an amount in excess of Five Hundred Thousand ($500,000) Dollars, for each Plaintiff, in addition to their reasonable attorney's fees, and costs and disbursements;

2. Punitive damages against Defendants, jointly and severally, in an amount to be determined at trial by jury;

3. All other legal and equitable relief authorized and appropriate under the circumstances.

***

Dated this 20th day of August, 2008.

By: /s/ James W. Delaplain

James W. Delaplain, #0267272
2140 Fourth Avenue North
Anoka, MN 55303
jim@delaplainlaw.com

In association with:

Daniel J. Brazil, #29956X
2124 Dupont Avenue South
Minneapolis, MN 55405
(612) 874-6109
djbrazil@djbrazil-law.com

*Attorneys for Plaintiffs*