## D.P. VAN BLARICOM, Inc.
**MPA, FBI-NA, CHIEF of POLICE (Ret)**
*POLICE PRACTICES EXPERT*
835 – 91ST lane N.E.
Bellevue, Washington 98004-4811
(425) 453-0082 FAX 453-3263 E-Mail dvbinc@aol.com

## Federal Rule 26 (a) (2) (B)
## REPORT OF PLAINTIFFS' POLICE PRACTICES EXPERT
## June 11, 2009

1.  My name is D.P. Van Blaricom and I make this report on behalf of plaintiffs in the matter of ***Mahaffy, et al. v. City of Minneapolis, et al.*** under my file 09-1515.

2.  My law enforcement career has spanned over fifty-two years of active employment to date:
    a.  Twenty-nine years of continuous police service, during which I was the Chief of Police of Bellevue, Washington for the last eleven of those years;
    b.  Thereafter, I have been engaged as a police practices consultant for an additional twenty-three years.

3.  A detailed statement of my qualifications, experience, training and a list of all of my publications are attached hereto as Exhibit "A".  Both my fee schedule for services and a list of my deposition and trial testimony for the preceding four years are attached hereto as Exhibits "B" and "C" respectively. My areas of expertise in the police arts and sciences include but are not limited to: police use of force; police administration, policies, practices, procedures and standards of care; internal investigation and discipline.  As a police practices expert, I have testified in state and federal courts for both plaintiffs and defendants throughout the United States.

4.  Daniel J. Brazil retained my services on May 11, 2009 to review the facts and circumstances of those events surrounding the arrest of Jackson Mahaffy by City of Minneapolis Police Department (MPD) officers on May 14, 2004 at approximately 2200 hours (10:00 PM).  At the time of making this report, I have discussed the matter with plaintiffs' counsel and I have reviewed the following documents:
    a.  Protective Order;
    b.  Amended Complaint;
    c.  Answer:
        1)  Lieutenant Robert Kroll,
        2)  Sergeant Wallace Krueger;
    d.  Answer:
        1)  Officer Christopher Bennett,
        2)  Officer Aaron Hanson,
        3)  City of Minneapolis;
    e.  Defendants' Responses to Plaintiffs' First Demand for Production;

*B56*

      f. MPD reports 04-115690;

      g. Hennepin County Sheriff's Office (HCSO) Adult Detention Center (ADC) reports 2004014397;

      h. Civilian Police Review Authority (CPRA) reports 04-2153;

      i. MPD Police Manual:

          1) 5-101 Code of Conduct Defined,

          2) 5-102 Code of Ethics,

          3) 5-105 Professional Code of Conduct,

          4) 5-202 Responsibility of Off-Duty Officers;

      j. Reference: National Law Enforcement Policy Center (NLEPC) standard of care for Off-Duty Conduct: Powers of Arrest;

    5. It is my customary practice to evaluate the objective reasonableness of police conduct on a case-by-case basis from the perspective of a former Chief of Police, career law enforcement officer and nationally recognized police practices expert (see Exhibit "A"). In conducting that evaluation I apply:

      a. My training and experience as a career police officer, who was required to make off-duty decisions to exercise police powers in the performance of my law enforcement duties;

      b. My training and experience as a police supervisor, who was assigned to conduct internal investigations;

      c. My training and experience as a police supervisor and commander, who was assigned to train police officers on use of force, off-duty conduct and patrol procedures;

      d. My training and experience as a police supervisor and commander, who had to evaluate the performance of my subordinate police officers;

      e. My training and experience as a chief of police, who had to hire, train, assign, administer and, as may be necessary, discipline and/or terminate police officers;

      f. My training and experience as a chief of police, who had to develop and administer policies and procedures for directing police officers under my command;

      g. My training and experience as a chief of police, who had to review internal investigations and make the final administrative decision on whether to sustain or not sustain allegations of misconduct;

      h. My continuing training, as is supplemented by an ongoing review of professional publications, that addresses contemporary developments in my areas of expertise;

      i. Additionally, I have served as a police practices expert in 1,500+ matters of police-related litigation (see Exhibit "A"), wherein I have testified at deposition or trial in hundreds of cases (see Exhibit "C") on whether or not a particular fact pattern was objectively reasonable under the totality of circumstances.

    6. My use of certain terms (i.e. – *"reasonable suspicion"*, *"probable cause"*, *"objectively reasonable"*, *"deliberately indifferent"*, *"ratified"*, etc.) merely reflects my training, in applying reasonable standards of care to police officers' conduct, and does not presume or imply a statement of any legal opinion.

    7.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that the following facts appear to be undisputed in the record:

    a.  Plaintiffs were engaged in an annual walking tour of art galleries on May 14, 2004 at approximately 2200 hours (10:00 PM), when they encountered off-duty MPD Sergeants Kroll and Krueger traveling in the Krueger vehicle, which also contained Cheryl (Mrs.) Krueger;

    b.  The attention of the vehicle occupants was called to Jackson Mahaffy, who was in the street;

    c.  Sergeant Krueger stopped his vehicle in the street, after which both he and Sergeant Kroll exited;

    d.  Without identifying themselves as MPD officers, Sergeants Krueger and Kroll initially confronted Jackson Mahaffy and subsequently confronted Flora Mahaffy, Daniel Nelson and Paul Von Arx too;

    e.  On-duty MPD patrol Officers were called to the scene, after which Officers Christopher Bennett and Aaron Hanson arrested Jackson Mahaffy on criminal allegations of:

        1)  Assaulting a police officer - 609.2231,
        2)  Riot - 609.71,
        3)  Damage to a motor vehicle – 609.595;

    f.  Jackson Mahaffy was booked into the HCSO ADC on May 14, 2004 at 2334 hours (11:34 PM) and held until released 3 days later on May 17, 2004 at 1452 hours (2:52 PM);

    g.  MPD Sergeant Erika Christensen's further investigation established that Jackson Mahaffy did not know that Sergeants Kroll and Krueger were off-duty police officers and all charges against him were subsequently dismissed on the Motion of the Minneapolis City Attorney,

    h.  Plaintiffs made a Complaint to the CPRA of excessive force and specifically alleged:

        1)  Both Sergeants Kroll and Krueger *"punched Jackson Mahaffy multiple times"*,
        2)  Sergeant Kroll *"kicked Daniel Nelson in the face and head multiple times"*,
        3)  Sergeant Krueger *"punched Flora Mahaffy twice in the head"*,
        4)  Sergeant Krueger *"punched Paul Von Arx in the jaw"*;

    i.  A CPRA investigation of plaintiffs' Complaint was appropriately conducted and the following *"Findings of Fact"* were reached by a duly constituted Hearing Panel on a *"preponderance of the evidence"* standard of proof:

        1)  *"Both officers approached Jackson Mahaffy as he was walking back to the sidewalk"*,
        2)  *"Without announcing themselves or their intentions, the officers grabbed Jackson Mahaffy and started punching him, knocking him to the ground"*,

3) *"Sergeant Krueger got astride Jackson Mahaffy and repeatedly punched him in the face",*

4) *"Sergeant Krueger punched Flora Mahaffy squarely in the face, knocking her to the ground",*

5) *"Without warning, Sergeant Krueger approached and struck Paul Von Arx's jaw from behind and above, knocking* (him) *to the ground",*

6) *"Sergeant Kroll rushed up behind Daniel Nelson, who was now seated on the sidewalk near Jackson Mahaffy, and kicked Daniel Nelson in the face, breaking one of* (his) *teeth";*

j.  Additionally, the CPRA investigation concluded that both Sergeants Kroll's and Krueger's version of events was totally at odds with all of the several other witnesses, and that their *"testimony was afforded significantly reduced weight"* due to *"low overall credibility",*

k.  Accordingly, the members of the CPRA Hearing Panel unanimously voted to:

1) **"SUSTAIN"** (emphasis in original) the allegation of *"excessive force"* against both Sergeants Kroll and Krueger,

2) **"SUSTAIN"** (emphasis in original) the allegation of *"inappropriate conduct"* against both Sergeants Kroll and Krueger;

l.  MPD Chief Timothy Dolan approved the CPRA findings and assessed the following discipline:

1) Sergeant Kroll, who had already been promoted to the rank of Lieutenant – *"160 hours suspension"* from duty without pay,

2) Sergeant Krueger – *"24 hours suspension"* from duty without pay,

8. Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that the CPRA investigation of plaintiffs' complaint met or exceeded a reasonable standard of care and may be relied upon. In reaching that conclusion I was specifically mindful of the following information from the record;

a.  All of the information previously described herein;

b.  The investigation reflected a thorough inquiry and an objective analysis of the facts;

c.  Sergeants Kroll and Krueger were afforded their due process rights:

1) The investigation complied with the requirements of *Garrity v. New Jersey,*

2) They had access to an appeal process,

3) The findings of the CPRA Hearing Panel were not reversed;

d.  The MPD Chief of police endorsed the finding of the CPRA Hearing Panel and assessed reasonable discipline in accordance therewith.

9. Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that Sergeants Kroll and Krueger assaulted plaintiffs. In reaching that conclusion, I was specifically mindful of the following information from the record:

a. All of the information previously described herein;
b. There is no evidence in the record that plaintiffs threatened or initiated any physical attack against Sergeants Kroll or Krueger;
c. At the most, defendants allege that Jackson Mahaffy may have struck Sergeant Krueger's vehicle with a bag that he was carrying and caused some minor scratching of the paint;
d. Nevertheless, Sergeants Kroll and Krueger physically attacked the plaintiffs, as is documented and well established in the CPRA investigation.

10.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that the MPD was on notice that Sergeants Kroll and Krueger had repeatedly demonstrated a propensity to use excessive force and engage in inappropriate conduct.  In reaching that conclusion, I was specifically mindful of the following information from the record:

a. All of the information previously described herein;
b. Sergeant Kroll's CPRA history documents:
    1) Prior complaints of excessive force – 9,
    2) Prior complaints of other inappropriate conduct – 17;
c. Sergeant Krueger's CPRA history documents:
    1) Prior complaints of excessive force – 5,
    2) Prior complaints of other inappropriate conduct – 5;
d. Nevertheless, both officers were maintained in positions of supervisory authority and Sergeant Kroll was promoted to the higher rank of Lieutenant, following his proven attack on plaintiffs.

11.  Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that the other MPD officers responding to the 911 calls of this incident more probably than not failed to intervene in Sergeant Krueger's assault of Paul Von Arx and Sergeant Kroll's assault on Daniel Nelson, after which they failed to conduct an objective investigation of the entire incident.  In reaching that conclusion, I was specifically mindful of the following information from the record:

a. All of the information previously described herein;
b. The CPRA investigation refers to the responding MPD officers as *"Certain Unknown Officers",* when they were in fact known from their reports in this matter to be:
    1) Officer Christopher Bennett,
    2) Officer Aaron Hanson,
    3) Officer Christopher Bishop,
    4) Officer David Campbell,
c. Other officers confirmed to have been on the scene included:
    1) Lieutenant James Rugel,
    2) Officer Clark Goset,
    3) Officer Toddrick Kurth,
    4) Officer Brandon Kitzerow;

d. Sergeant Kroll had called 911 twice, with no sense of urgency, and identified himself as an MPD supervisor, after which other officers were dispatched to an alert *"toned"* call of *"officer needs help"*;

e. The CPRA interviewed the responding officers:

    1) Officer Bennett stated:

        a) When, *"our call comes to us, Officer needs help -- we think our guys are the victims"*,

        b) Both *"Sergeants Krueger and Kroll were walking around agitated"*,

    2) Officer Hanson stated:

        a) He immediately saw Sergeant Kroll, who he describes as, *"He's one of the Federation* (union) *guys I've known, one of the important guys in the police department"*,

        b) After arresting Jackson Mahaffy, they ignored other witnesses, who were *"mad"* at them, and left the scene to meet with Sergeants Kroll and Krueger nearby, where *"we began to hear what happened, what we need to do with this guy that we had"* under arrest,

        c) While in their custody, Jackson Mahaffy *"was really decent with my partner an I"* (sic),

    5) Officer Campbell stated:

        a) Paul Von Arx admittedly complained to him that *"an officer hit him for no reason"*,

        b) Daniel Anderson *"didn't agree with the arrest"* but he *"told him to call the precinct"* because, *"I can't tell those guys – those are sergeants"*,

f. The CPRA interview of independent witness Matthew Rolfe elicited his statement:

    1) *"And I did actually se an on-duty clothed or uniformed officer kick one of the – I guess, one of the victims after he had been handcuffed"*,

    2) *"But I did witness that and I remember that specifically"*;

g. Sergeants Kroll and Krueger had supervisory authority over the subordinate MPD responding officers, which they demonstrably exercised in their own self-interest;

h. The MPD responding officers did not interview plaintiffs or other independent citizen witnesses on the scene and relied solely upon Sergeants Kroll's and Krueger's version of events;

i. Officers Bennett and Hanson arrested Jackson Mahaffy in total reliance upon the since proven false statements of Sergeants Kroll and Krueger and in total disregard of multiple other witnesses available to be interviewed on the scene;

j. Most and/or all of the involved officers acquiesced to the use of excessive force against plaintiffs by failing to intervene and/or report the inappropriate conduct of Sergeants Kroll and Krueger.

    k.  Additionally, most and/or all of the involved officers conspired to conceal the use of excessive force and the inappropriate conduct of Sergeants Kroll and Krueger by the attempted malicious prosecution of Jackson Mahaffy on criminal charges that they knew or should have known were baseless and without probable cause,

    12.  I am prepared to testify to these opinions at deposition or trial, if called upon to do so.

    13.  If I am provided with further documentation for my review, I may have additional opinions.

*/s/ D.P. VAN BLARICOM*